IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | No. 20-CR-80 KWR |
| vs. | ) | |
| | ) | |
| JODIE MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Not so many years ago, Jodie Martinez was a promising young woman, with a good job, a loving family, and the stability she craved after a turbulent childhood. Now, for the last eleven months, she has been in pretrial detention at the McKinley County jail facing federal felony charges. She works hard to make the best of her time. She is clean and sober. She has been consistently taking a proactive approach to her mental health since her incarceration. (*See Def. Exh. A – medical records*). She began taking psychiatric medications to manage her anxiety, grief, and guilt. These medications were occasionally adjusted as she responsibly reported symptoms and side effects to medical staff. She met with a mental health counselor, as available within the limits of the jail, to discuss the death of her son, her feelings of guilt, and her overall mental health. She started working out regularly and learning about meditation and mindfulness, looking for positive outlets. In August, she told medical staff she wanted to discuss discontinuing some of her medications, that she felt she was doing better.

She also engages in available rehabilitative programs. Over the summer, the jail began offering courses on tablets in an effort to mitigate the loss of programming due to COVID. Jodie took every class offered – topics like substance abuse and 12-step treatment, mindfulness and

1

meditation, parenting, and successful reintegration. All forty-six certificates she earned for completion of forty-six classes are attached *(Def. Exh. B)*. A few weeks ago, the jail began offering classes through a licensed counselor; the result of a grant the county obtained. Jodie takes two classes a week, one hour per class. The course covers addiction recovery, parenting, preventing recidivism, and anger management. The only requirement for admission is a PTSD diagnosis. Jodie is excited about the classes. She hopes to stay at the McKinley County jail long enough to complete the program.

*Personal history and characteristics*

Before her life in jail, and after a chaotic childhood, Jodie had built the stable family, career, and home she always desired. Growing up was hard. Her father died of an accidental overdose when she was only three years old. She grew up with her mother, Kaylene Beltran, and her siblings. For part of her childhood, her mother was in a relationship with Jodie's brother's father. He was an abusive alcoholic, who hit Ms. Beltran and the children. After Ms. Beltran left him, they moved around a lot while she struggled as a single mother. They lived in Zuni, Los Lunas, Albuquerque, Santa Fe, Española, Ohkay Ohwingeh, and Tucson, Arizona. When she was in 8th grade, she was living in Tucson with her mother and siblings. She came home from school one day and her mom announced they were moving back to Zuni. Jodie didn't know why and her mom never said. Shortly after they got to Zuni, Jodie's sister ran away back to Tucson, and her brother went to live with his father. Jodie was all alone. For high school, she enrolled herself at the Santa Fe Indian School as a boarding student. She lived and went to school there from 9th to 11th grade. She made friends for the first time in her life, finally at a school long enough to do so. She was near her paternal family, and was very close with her grandmother Josephine Martinez. In 11th grade, she moved in with Ms. Martinez in Ohkay Ohwingeh. In

2

2004, Jodie's daughter was born. In 2006, she obtained her GED and began working for the Ohkay Ohwingeh Utility Department.

In 2007, she moved to the Ohkay Ohwingeh Housing Authority. She worked there for the next ten years, while raising her family in Pojoaque with her husband, Samuel Molina. Their son was born in 2010. Jodie started with the Housing Authority as a secretary, was promoted to administrative assistant, then to property manager, then to donor relations manager. She did important work – was in charge of a $3 million dollar renovation to restore and revitalize the original, historic pueblo with the traditional adobe and mud brick construction. Her work brought a sense of pride and community back to the Pueblo. Before this project, only a few families lived in these historic buildings, now there are over forty. Jodie loved the work. The Ohkay Ohwingeh Pueblo was one place that felt like home, where her father was from, and where she spent time with her grandmother. She was honored to be able to serve and better the community. On October 19, 2015, she gave a TED talk about the restoration of the Pueblo.[1] The Pueblo project she spearheaded was selected to be in the Cooper Hewitt, Smithsonian Design Museum in New York City (*See* https://insider.si.edu/2017/01/restoration-ohkay-owingeh-tribes-historic-pueblo/). Jodie brought her husband and children to New York for an awards ceremony. It was such a proud moment for her, to be able to show her children the value and outcome of her hard work and dedication.

In addition to her work, she volunteered at Moving Arts Española, which provides arts education and academic support for children in the greater Española community (https://www.movingartsespanola.org/what-we-do). The goal of the program to reach kids who might otherwise fall into early substance abuse, and provide them with a positive outlet through

---

[1] A CD containing a video of this TED talk has been lodged as *Defendant's Sentencing Video*, with copies for the Court and government, contemporaneous with filing of this Sentencing Memorandum.

3

moving and visual arts. Jodie was president of the board for six years. Through her efforts, the program collaborated with schools in the area to funnel kids into the programs. Both of Jodie's children eventually attended the program as well.

Overall, life seemed to be going so well. Jodie was dedicated to her community and to her family. Not everyone is asked to give a TED talk, or has their work featured in a nationally renowned museum. But all was not as it seemed. Jodie was struggling in her marriage. Her husband was controlling and verbally abusive. At work and in her volunteering, she felt powerful, strong, and capable, and at home she felt the opposite. Mr. Molina was a wonderful father, but not a great husband. In 2015, Jodie's grandmother died. Jodie would visit her every day and the loss was very hard. Then in 2017, she lost her job, mostly due to tribal politics – certain powerful individuals in the community did not want her, not an enrolled tribal member, to have the position. After this, her marriage completely crumbled. She decided to leave her husband and her home with nothing. She went to stay with a cousin, and her children stayed with Mr. Molina. She did not want to have them with her until she was stable, with a place of her own and a job. Still she spent as much time with them as she could. She just never quite got back on her feet.

Around this time Jodie started using drugs. At first cocaine, and then methamphetamine. Her cousin used and it was around. Her whole life had changed – before she had a respected career, a family, and a home – now she had no job, no car, no home, and was separated from her kids. She wondered if she made the right decision leaving Mr. Molina, but also felt relieved to be out of the relationship. She was drifting, and made a series of bad decisions. She eventually moved to Albuquerque, where her drug use worsened and her life slowly unraveled. She picked up criminal charges for the first time, did not have steady employment. She tried to see her kids

4

as often as she could, and curbed her drug use when they were around. Even as she made bad decisions in her own life, she did what she thought was best for her children – left them with Mr. Molina. She knew they needed her, that she had to get it together, but the separation pained her and she turned to substances to cope.

*Circumstances of the Offense*

In early summer 2019, Jodie moved to Zuni, where her mother, stepfather, and maternal grandparents lived, in an effort to get away from drugs and start fresh. Her new fiancé, Cesario Rubio, came along with her. Her grandfather had some businesses out there, which had long fallen into disrepair. They spent the summer working on the businesses and spending time at the family's ranch home in Fence Lake, but not entirely away from drugs as Jodie had planned. She continued to use methamphetamine throughout the summer.

In early July, her son came to visit. On July 5, Jodie and Mr. Rubio took him out to the ranch home for the night. They were going to spend time riding four-wheelers and looking for deer antlers. He was nine, and liked to play video games, but Jodie wanted him to experience the outdoors. The next morning they headed back to Zuni. Jodie's son was in the backseat, buckled in – she made sure of that. He was tired and fell asleep. Mr. Rubio was driving at first, and then they switched. While they were travelling on State Road 53, not far from Zuni, Jodie talked to her mom on the phone. Mr. Rubio held the phone out in his hand, with her mom on speaker. She's still not sure what happened next, but shortly after hanging up with Ms. Beltran she veered into the oncoming lane of traffic. Hoping to avoid a head-on collision, the passing vehicle moved into her lane. At the last minute, Jodie corrected and collided into the passenger side of the oncoming pickup truck.

5

When they finally stopped Jodie looked in the backseat. She could tell her son was seriously injured, possibly deceased. There is no way to describe the horror of this discovery. A passerby helped get her son out of the car, and Jodie lay on the pavement with him in her arms. Any parent can only imagine the feeling of losing a child, but Jodie must deal with the dismay that she is responsible for her son's death. This, and the days that followed, became the worst of Jodie's life. Probably the worst of the lives of everyone involved. Of course, besides the tragic loss of Jodie's son, an innocent woman, Mrs. Sweeney, was seriously injured in the accident. Jodie felt awful to learn of this. When she took over for Mr. Rubio, she thought she was fit to drive. He was tired, was out early that morning looking for deer antlers with her son. She thought it would be better for her to take over.

Jodie was arrested that day, brought to jail in Zuni to face tribal charges for the accident. In the days and weeks that followed she was a wreck. She was separated from her daughter. She was allowed to attend her son's funeral, but coming back to jail after was immensely difficult. She was in so much pain, but you cannot really show that in jail. There was no help, no counseling. She made mistakes in those early days, admittedly, and she paid for those mistakes in Zuni tribal court. Since then, she has worked to turn it around. In January, the Zuni Court released her to a treatment program. She was excited for this opportunity, to get sober, to work towards reuniting with her daughter, and to rebuild her life. Instead, a few days later, FBI agents arrested her at the treatment program.

***The requested sentence***

After losing her job and a bad breakup with her husband, Jodie had to start over with nothing. In doing so, she made mistakes and poor choices. The worst of those resulted in serious injuries to an innocent woman and the death of her son. Those things will stay with her forever,

6

but she is trying to rebuild. She does what she can under the circumstances. She has taken steps, on her own initiative, to engage with programs that can help her. She lost her way but it does not have to define the rest of her life. The grief she feels for her son will never go away, nor does she want it to. She wants to live a better life in his honor, and in his memory. The woman who gave a TED talk and whose work was recognized by a national museum still exists, and she intends to find her way back there again.

The defense requests the Court impose a sentence of eighteen months. Jodie cannot bring her son back, or change what happened to Mrs. Sweeney. She cannot erase the harm she caused to so many people with her decision that day, and her decisions in the preceding months and years. But she can make different choices now and in the future, and she will. The Court must determine what is sufficient, but not greater than necessary punishment. Lengthy incarceration, in this case, is not necessary for many of the purposes of punishment. A Court imposing incarceration on a woman whose decisions resulted in her son's death cannot inflict a heavier punishment than is already in her heart. Jodie suffers from the loss of her son every day. So does everyone around her – Mr. Molina and his extended family, Jodie's daughter, who is without her brother or her mother, and Jodie's family. She knows that loss falls on her. She never meant to cause her son's death, or to cause serious injuries and pain to Mrs. Sweeney, but her intentions do not matter as much as the outcome.

The memory of the harm she caused that day, to her own family and to the Sweeneys — there can be no greater deterrence to future drug use and criminal behavior. Jodie's history of steady employment, and living a productive, law-abiding life, will serve her well as she transitions from incarceration to supervision. She has a model on which to base her future behavior and decisions. She knows how to conform her conduct to the requirements of society,

7

has lived most of her life without committing crimes or abusing substances. She is eager to do these things again. Jodie works hard during her time in pretrial detention to rehabilitate herself. She engages in mental health treatment and counseling. She presents forty-six certificates to this Court, and has completed every single course that was offered to her. Now, she takes weekly classes. An eighteen-month sentence allows her to continue this work, and is sufficient but not greater than necessary under the circumstances.

The requested sentence also takes into consideration that Jodie served three months on these charges in Zuni tribal jail. The Guidelines imprisonment range, calculated in the PSR, is 21 to 27 months. Jodie is a first-time offender, whose life spiraled out of control from 2017 to mid-2019. She made poor decisions and mistakes, but she did not intend to cause harm to Mrs. Sweeney or her son. If this were a case without a Rule 11(c)(1)(C) plea agreement, a low-end Guidelines sentence would be appropriate. A sentence of eighteen months would be, in actuality, a low-end Guidelines sentence, following the dictates of USSG 5K2.23, and taking into account the 91 days she has already served (*See* PSR, ¶ 94).

The defense has one objection to the special conditions of supervision endorsed in the PSR (Doc. 29-1). Probation recommends that Jodie complete an inpatient substance abuse treatment program. A special condition of supervised release must satisfy three statutory requirements. It must be

> reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs. Second [it] must involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation. Third, [it] must be consistent with any pertinent policy statements issued by the Sentencing Commission.

*U.S. v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011). A condition that Jodie complete inpatient substance abuse treatment involves a greater deprivation of her liberty than is reasonably necessary. Her last drug use was in July 2019, she has been incarcerated since, she is participating in substance abuse treatment while in-custody, and no professional evaluation has suggested that she needs inpatient, as opposed to outpatient, treatment at this time. The defense suggests that the Court Order outpatient substance abuse counseling or Order an evaluation to determine the level of care necessary, and authorize inpatient treatment only if a professional evaluation recommends it. Jodie is happy to continue participating in drug treatment, but is also anxious to restart her life after she finishes serving her prison sentence. She is eager to look for work, reunite with her daughter, and help her grandparents. The condition of inpatient treatment violates the *Mike* principle that special conditions, "involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation." 632 F.3d at 692.

WHEREFORE, for the foregoing reasons, Defendant, Jodie Martinez, through undersigned counsel, requests the Court impose a sentence of eighteen months in this case.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

*Electronically filed November 4, 2020*
/s/ Mallory Gagan
Assistant Federal Public Defender
Attorney for Jodie Martinez

9