IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Cr. No. 20-0080 KWR |
| ) | |
| vs. ) | |
| ) | |
| **JODIE MARTINEZ**, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America respectfully requests that this Court accept the Fed. Crim. P. Rule 11(c)(1)(C) Plea Agreement (hereinafter "Plea Agreement") and to sentence Defendant to a term of imprisonment of 24 months, followed by three years of supervised release. In support thereof, the United States submits the following:

PROCEDURAL BACKGROUND

On January 9, 2020, a federal grand jury returned an Indictment charging Defendant with one count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). Doc. 2. On August 3, 2020, Defendant pleaded guilty to Count 2 of the Indictment, with the benefit of a plea agreement. Doc. 27.

The Presentence Investigation Report ("PSR") was disclosed on September 30, 2020. Doc. 29. According to the PSR, Defendant's total offense level is 16. PSR ¶ 33. Defendant's criminal history category is I. PSR ¶ 39. A total offense level of 16 and a criminal history category of I result in a guideline imprisonment range of 21-27 months. PSR ¶ 79.

SENTENCING ARGUMENT

A. Rule 11(c)(1)(C) Plea Agreement

The United States respectfully requests the Court to accept the Plea Agreement and sentence Defendant to 24 months of imprisonment, followed by three years of supervised release.

In consideration of acceptance of Defendant's Plea Agreement, the United States asks the Court to consider the parties' interest in minimizing the uncertainties of trial by negotiating this settlement. "The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties." *Missouri v. Frye*, 566 U.S. 134, 144 (2012). Parties in a criminal case must assess the likely outcome of motions and trial practice. Defendants in particular must weigh their tolerance for the risk of losing a trial against the benefits of a negotiated settlement. Likewise, the government must weigh the public and the victims' interest against the risks of proceeding to trial.

In extending the plea offer, the United States considered evidentiary issues of the case. For instance, Defendant admitted that she used methamphetamine four days prior to the incident. PSR ¶ 16. A drug test was conducted on July 7, 2019, at the Zuni Detention Center. Discovery Bates Number ("DBN") 744, 748, 2057. The drug test revealed that Defendant had methamphetamine in her system. *Id.* According to investigative reports, "the swabs used to drug test [Defendant] were sent to the Las Cruces Forensic Laboratory weeks later in an effort to determine the amount of methamphetamine [Defendant] had in her system." DBN 749. The swab samples were analyzed, but there were no "indications of any drug on them." DBN 751. However, the fact that drugs could not be identified "does not mean that no drugs were present,"

it is just that the forensic scientist could not "detect them." DBN 750. Although the evidence shows that Defendant was under the influence of methamphetamine, the level of methamphetamine in Defendant's system could not be detected.

Pursuant to an inventory search, drug paraphernalia were found inside Defendant's vehicle. DBN 825-826. Officers found a "makeshift meth pipe" "in a black women's purse that was in a green back pack [sic] bag [that the responding officer] found within the rear cargo seat [of the vehicle]." DBN 825. Officers also found in the vehicle a glass pipe and a "small bag with [m]arijuana plants printed on one side of the clear bag," and a blue grinder. DBN 826. Defendant's fiancé was also a passenger in the vehicle and according to his record, he has a history of drug abuse and extensive criminal history. DBN 53-66.

The parties have carefully weighed the evidence and their options, and ask this Court to accept the negotiated Plea Agreement. The benefit to Defendant is that it reduces her exposure to incarceration. The benefit to the government is the certainty this agreement provides and the finality it gives to the victims and their families.

B. Sentencing Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing. *See United States v. Booker*, 543 U.S. 220 (2005). Among other factors, a court must consider the nature of the offense, need for adequate deterrence and to reflect the seriousness of the offense, and the applicable sentencing guidelines. 18 U.S.C. § 3553(a).

1. **The Nature and Circumstances of the Offense**

Defendant's conduct has forever changed the life of the victims and their families, including Defendant's own life. On July 6, 2019, Defendant was driving westbound on NM-53,

near milepost 18, when she merged into incoming traffic in the eastbound lane before colliding with a blue pickup truck that was traveling eastbound on NM-53.  PSR ¶ 10, DBN 2064-2146 (Crash Reconstruction Report).  As a consequence of the vehicle collision, Defendant's son—who was sitting in the back passenger seat—died; and Jane Doe—the front seat passenger of the blue pickup truck—sustained serious bodily injury.  DBN 2066.  At the scene, Defendant told officers that she fell asleep while driving.  PSR ¶ 11.  She said when she woke up, she saw the blue pickup truck and tried to avoid it, but she was unable to turn in time before crashing.  *Id.*

Later on that day, an FBI agent interviewed Defendant.  PSR ¶ 16.  Defendant's version of the events was that she was talking to her mother on the phone as they returned home.  *Id.*  She said when she was done talking to her mother, the phone fell.  *Id.*  Defendant reached down to pick it up, and when she looked up, she saw the blue pickup truck coming.  *Id.*  She said she could not avoid the blue pickup truck.  *Id.*  During the interview, Defendant also admitted to using methamphetamine four days prior to the incident.  *Id.*

The FBI agent interviewed Defendant's fiancé.  PSR ¶ 16; DBN 15-17, 754.  He stated that they used methamphetamine three days prior to the incident.  PSR ¶ 16.  He said the methamphetamine they took three days earlier was "far more pure than any meth he had ever taken."  DBN 17.  He also stated that they "smoke weed all the time."  DBN 16.

After Defendant's interview on July 6, 2019, Defendant was transported to the Zuni Detention Center.  DBN 759.  On July 7, 2020, Defendant was tested for drugs at the Zuni Detention Center, and Defendant tested positive for methamphetamine.  DBN 744.  On July 8, 2019, another drug test was conducted on Defendant prior to leaving the facility to attend her son's funeral, and Defendant again tested positive for methamphetamine.  DBN 745.

After the incident, Defendant's vehicle was towed. DBN 1097. On July 25, 2019, the Zuni Criminal Investigator searched a green backpack located inside Defendant's vehicle. DBN 2010. The search was pursuant to a search warrant. *Id.* Inside the green backpack, the Criminal Investigator found "glass pipes, small packaging baggies, clear sandwich baggies, and a blue grinder with a white powdery substance" that field tested positive for amphetamines/methamphetamine. *Id.* On August 1, 2019, investigators searched Defendant's vehicle pursuant to a search warrant. PSR ¶ 18. Investigators found an open mail package addressed to an unknown individual. *Id.* The open package had multiple prescription medication bottles, including hydrocodone. *Id.*

2.      **The History and Characteristics of the Defendant**

Defendant's criminal history category is I. PSR ¶ 39. Nonetheless, Defendant has a history of prior arrests for attempt to commit a felony to wit: receiving/transferring stolen motor vehicles (PSR ¶ 42), conspiracy to commit receiving/transferring stolen motor vehicles (*id.*), possession of a controlled substance (*id.*), attempt to commit a felony to wit: embezzlement of a motor vehicle (PSR ¶ 43), driving under the influence of intoxicating liquors or drugs (PSR ¶ 44), refusal to submit to chemical testing (*id.*), shoplifting (PSR ¶ 45), and breaking and entering (PSR ¶ 46). It is also notable the numerous warrants that were issued for Defendant's arrest in the months prior to the instant offense, and some of them remain active. *See* PSR ¶ 41-43, 45.

Defendant also has a history of drug abuse. For instance, while incarcerated in the Zuni Detention Center for charges that arose from the instant offense, Defendant was granted a furlough to attend her son's funeral. Before leaving the facility on July 8, 2019, Defendant was tested for drugs at the Zuni Detention Center and Defendant tested positive for methamphetamine. DBN 745. Defendant was allowed to leave the detention center and when

she returned to the detention center on July 11, 2019, she was administered another drug test, and Defendant tested positive for methamphetamine.  DBN 746.

Furthermore, Defendant brought contraband to the detention facility.  According to police reports, on July 13, 2019, Defendant smuggled methamphetamine through her vagina upon return from furlough.  PSR ¶ 37.  The methamphetamine was located in a Defendant's box that was located under the defendant's bunk bed and was folded inside a soap wrapper.  *Id.*  The baggie, rolled up paper, and methamphetamine weighed 2.09 grams.  *Id.*

>   3. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

A sentence of 24 months of imprisonment would reflect the seriousness of the offense and provide adequate deterrence.  Deterrence includes both general deterrence and specific deterrence.  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  While general deterrence's goal is to "deter others from committing the same crime by demonstrating its disadvantageous consequences," specific deterrence's goal is "to incapacitate the wrongdoer, so as to protect society from further criminal activity."  *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010).  As a general deterrent, a sentence of 24 months of imprisonment would demonstrate to others the disadvantageous consequences of driving while under the influence of drugs.  As a specific deterrent, Defendant will be deterred from similar criminality considering that this would be her first criminal conviction.

>   4. **The Kinds of Sentences Available and the Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant**

One of the § 3553(a) factors that the Court must consider is the sentencing range established by the United States Sentencing Commission for the applicable category of offense

committed by the applicable category of defendant.  The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise . . .'" *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007).  "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'"  *Id.*

Although a sentence of 24 months of imprisonment is below Defendant's calculated sentencing guideline range if she would have been convicted of both counts in the Indictment, a sentence of 24 months of imprisonment falls within the calculated guideline range for the charge of assault resulting in serious bodily injury.  *See* PSR ¶ 79.  Thus, this term of imprisonment is an approximation of a sentence that might achieve the sentencing goals.  In addition, the Plea Agreement has substantially reduced Defendant's exposure to incarceration; a further reduction is not warranted.  *See* PSR ¶ 80.

## CONCLUSION

Wherefore, for the foregoing reason, the United States respectfully requests the Court to accept the Plea Agreement and sentence Defendant to a term of imprisonment of 24 months, followed by three years of supervised release.  The United States submits that this sentence is

"sufficient, but not greater than necessary, to comply with the [sentencing] purposes." 18 U.S.C. § 3553.

                 Respectfully submitted,

                 JOHN C. ANDERSON
                 United States Attorney

                 *Electronically filed 11/4/2020*
                 RAQUEL RUIZ-VELEZ
                 Assistant United States Attorney
                 P.O. Box 607
                 Albuquerque, New Mexico  87103
                 (505) 346-7274
                 (505) 346-7296 fax

I HEREBY CERTIFY that on the 4th
day of November, 2020 I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.
*/s/*_____
Raquel Ruiz-Velez
Assistant U.S. Attorney